UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Asia Pacific Industrial Corporation, a British Virgin Islands corporation and Ashok S. Kothari, a resident of Hong Kong, individually,

Plaintiffs,

vs.

Rainforest Café, Inc., a Minnesota corporation,

Defendant.

Case File No.: 01-877 JMR/FLN

**REPORT AND RECOMMENDATION**

---

Scott Johnson for Plaintiffs.
Edward Magarian for Defendant.

---

**THIS MATTER** came before the undersigned United States Magistrate Judge on August 24, 2001, on Plaintiffs' Application to Stay Proceedings and Compel Arbitration [#3]. For the reasons which follow, the Court Recommends that Plaintiffs' Application be granted.

**I. BACKGROUND**

Plaintiffs Asia Pacific Industrial Corporation ("Asia Pacific") and Ashok S. Kothari ("Kothari") initiated this case against Defendant Rainforest Café, Inc. ("Rainforest") after Rainforest refused to arbitrate the proper amount of compensation due Kothari and/or Asia Pacific for Kothari's assistance in locating an Asian franchisee for Defendant. (See Complaint.) Plaintiffs initially discussed the search in 1997 with Lyle Berman ("Berman"), a principal of



SEP 04 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Rainforest, and commenced their efforts shortly thereafter. (Id.). The search concluded when Plaintiffs introduced James Robertson ("Robertson") to Defendant. (Id.). Robertson agreed to become Rainforest's Asian franchisee and set about opening a series of Rainforest Cafés throughout the region. (Id.). The restaurants opened by Robertson are still in operation today. (Id.).

The parties are unable to agree on the amount of compensation due Plaintiffs for Kothari's effort in locating Robertson and introducing him to Defendant. Plaintiffs seek $1,000,000 in fees, while Defendant has offered only $50,000. (Defendant's Memorandum at 2-3). Presently before the Court, however, is a preliminary issue which has caused further disagreement – whether the parties agreed to arbitrate the question of Plaintiffs' compensation.

This preliminary issue has been a source of contention among the parties for over a year. As the disagreement developed, several pieces of key correspondence were exchanged. In June, 2000, Stephen Cohen, the Vice-President and General Counsel for Defendant, faxed correspondence to Kothari which stated, inter alia:

> Lyle [Berman] asked me to review this file and to respond to your request for an arbitration. We believe that an arbitration in Minneapolis would be a workable process for resolving this dispute and as such we have turned it over to our counsel, William Pentelovich, Esq., at Maslon, Edelman, Borman & Brand. Please provide me with the name and number of your counsel so we can discuss the ground rules for arbitration. I believe it is in all of our interests to keep expenses to a minimum.

(Exhibit A to the Affidavit of Scott A. Johnson). Counsel for the parties then engaged in a months' long exchange of proposals as to how the arbitration would be conducted, a discussion which Plaintiff alleges was protracted due to the impending sale of Defendant. (See Affidavit of Scott A. Johnson). Among other communications, Defendant's counsel, William Pentelovich

("Pentelovich"), sent correspondence to Plaintiff on December 4, 2000, which stated in part that Pentelovich "received permission from [his] client to go forward with the arbitration this afternoon." (Exhibit C to the Affidavit of Scott A. Johnson). Accompanying the December 4, 2000, letter was an arbitration proposal which Plaintiff's counsel found acceptable but for a few minor changes. (Affidavit of Scott A. Johnson).

Despite the seeming agreement of both parties to arbitrate, more delay ensued, culminating in a February 7, 2001, letter from Pentelovich disclaiming any willingness to arbitrate on the part of Defendant. The letter stated inter alia:

> I apologize in the delay in getting back to you. As you probably know, our client had made a settlement proposal to your client which your client had rejected via letter dated January 3, 20001. On January 17, 2001, our client sent a letter to Mr. Kothari requesting that he make a counter proposal. They have heard nothing further from him. They had been awaiting further word from him before giving me authority to enter into an arbitration agreement. Our clients have decided to interpret your letter of February 6, 2001, as a rejection on Mr. Kothari's behalf of the invitation that he make a counter proposal. In light of that rejection and after considering the matter further, our client has decided that it would prefer to litigate this matter rather than arbitrate...

(Exhibit D to the Affidavit of Scott A. Johnson). This letter precipitated the filing of the instant Application. (Memorandum in Support of Plaintiffs' Application to Stay Proceedings and Compel Arbitration at 4).

## II. ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2000), controls the outcome of this dispute. Section 2 of the FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or *an agreement in writing to submit to arbitration an existing*

> *controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*

9 U.S.C. § 2 (emphasis added). In other words, if the parties agreed to arbitrate their dispute, this Court is obligated to enforce that agreement unless there is a legal or equitable ground to revoke the contract.

The FAA is construed liberally in the Eighth Circuit. See, e.g., Lyster v. Ryan's Family Steak Houses, 239 F.3d 943, 946 (8th Cir. 2001)(dispute submitted to arbitration if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement). Orders to arbitrate are not denied unless "the arbitration clause is not susceptible of interpretation that covers the asserted dispute." AT&T Tech., Inc. v. Communication Workers of America, 475 U.S. 643, 650 (1986). Signatures on an agreement are not necessary to compel arbitration. See, e.g., Winfrey v. Bridgestone, Inc., 199 U.S.App. Lexis 33616 (Dec. 23, 1999)(rejecting contention that lack of signature voids obligation to comply with mandatory arbitration provisions).

The issue of whether a contract exists is governed by Minnesota law. See Battle v. Prudential Ins. Co. of America, 973 F.Supp. 861, 867 (D. Minn. 1997)(citing First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). Application of Minnesota contract law to the instant facts demonstrates that an agreement to arbitrate was formed no later than the December 4, 2000, letter, in which Pentelovitch represented that his client had accepted Plaintiffs' offer to arbitrate. See Travelers Ins. Co. v. Tufte, 435 N.W.2d 824 (Minn. Ct. App. 1989)(where parties are negotiating at a distance, acceptance by mail is ordinarily reasonable and takes effect upon deposit in the mail). The cost savings realized by arbitration, of which both

parties were cognizant, constitute the consideration necessary to make the agreement enforceable.[1] Chalmers v. Kanawyer, 544 N.W.2d 795, 798 (Minn. Ct. App. 1996)(consideration necessary to form valid contract).

Other courts have reached similar conclusions. In Lory Fabrics, Inc. v. Dress Rehearsal, Inc., 78 A.D.2d 262 (N.Y. App. 1980), the FAA was held to require arbitration where each party's proposal contained an arbitration clause. This holding was reached despite the fact that the proposed clauses differed as to place of arbitration, administering tribunal, governing rules, court of jurisdiction, controlling state law, and limitations of the arbitrators' powers. Id. at 263-64.

This conclusion is buttressed by the fact that the FAA itself contemplates that parties that have agreed to arbitrate will not have agreed upon every last detail. For example, 9 U.S.C. § 5 sets forth a default procedure for selection of arbitrators, 9 U.S.C. § 7 sets forth discovery procedures, and 9 U.S.C. § 9 provides procedures for the award of arbitration. All of these provisions concern details every bit as minor as the discovery provisions which led Plaintiffs to make a counterproposal to the proposal received on December 4, 2000.

Because the Court has found that an agreement to arbitrate existed no later than December 4, 2000, it need not consider the issue of whether Defendant is equitably estopped from denying that it has agreed to arbitrate.

---

[1]Defendant's endorsement of the "mirror image" rule does not change this outcome. The "mirror image" rule itself provides an exception for "minor changes that do not substantially alter the performance obligations of the parties." See Gresser v. Hotzler, 604 N.W.2d 379, 382 (Minn. Ct. App. 2000). The changes proposed by Plaintiffs after December 4, 2000, did nothing to affect the performance obligations of the parties. Compare Gresser, 604 N.W.2d at 383 (party's unilateral alteration of closing date substantially alters performance obligations of the parties).

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Plaintiff's Application to Stay Proceedings and Compel Arbitration [#3] be **GRANTED**.

   a. All proceedings in this case should be stayed;

   b. This matter should be referred to arbitration.

DATED: August 31, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties within ten days of service of this Report and Recommendation written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.